# Alma Building and Loan Association, to use, v. Kramer et al.

*Wesley H. Caldwell*, for plaintiff.

*Henry Arronson* and *Simon Pearl*, for Smiller Building and Loan Association.

LAMBERTON, J., June 20, 1932.—On September 18, 1918, Rosie Kramer executed and delivered to Alma Building and Loan Association a second mortgage in the principal sum of $1200, secured upon premises No. 1618 South Fifth Street, in the City of Philadelphia. This mortgage was subject to a prior first mortgage to secure the principal sum of $2500. Subsequently, Hyman Betoffsky became the owner of said property, subject to said mortgages. On September 24, 1929, Alma Building and Loan Association assigned said second mortgage to the use-plaintiff, Tillie Betoffsky, a daughter-in-law of Hyman Betoffsky. There was a default under said mortgage, judgment was entered thereon in the amount of $1350, and on February 2, 1931, the property was sold by the sheriff to the use-plaintiff for the sum of $2550, subject to the first mortgage of $2500. The use-plaintiff has tendered a deed to the sheriff, together with a list of liens against said premises certified by the Commonwealth Title Company, which list of liens shows the judgment of the use-plaintiff to be prior to all other liens except that of the first mortgage. The use-plaintiff has requested the sheriff to accept her receipt for the amount of her lien, and has offered to deposit the balance of her bid in cash. This the sheriff has refused to do, because of a letter written to him on behalf of Smiller Building and Loan Association (formerly South Fourth Street Building and Loan Association), which is the owner of a judgment junior in lien to that of use-plaintiff, in so far as the record shows.

After waiting for upwards of a year for Smiller Building and Loan Association to make some move to determine the status of its lien, the use-plaintiff filed a petition and secured a rule upon the sheriff to show cause why he should not accept from petitioner a deed, together with a list of liens, and accept the receipt of the petitioner for the amount of her lien as a credit against her bid. To this petition Smiller Building and Loan Association has filed an answer, averring that the use-plaintiff did not acquire any interest in the mortgage forming the basis of her judgment, because the assignment thereof by Alma Building and Loan Association was ultra vires; that said assignment was taken by the use-plaintiff for the purpose of defeating the

rights of Smiller Building and Loan Association; that all liens upon said real estate prior to that of Smiller Building and Loan Association, except the first mortgage of $2500, are void; that the mortgage of Alma Building and Loan Association was purchased by the use-plaintiff at the instance of Hyman Betoffsky, the real owner of the premises mortgaged, and that the moneys used for the purchase of the same were the moneys of said Hyman Betoffsky; that the entire transaction was entered into for the purpose of cheating and defrauding Smiller Building and Loan Association; that the use-plaintiff did not pay the face value of said mortgage, to wit, $1200, but purchased the same for $800; that this transaction was for the purpose of hindering and delaying Smiller Building and Loan Association in the collection of moneys due it; that unless the full bid at the sheriff's sale, to wit, $2550, is paid in cash, respondent's rights will be greatly prejudiced.

The matter comes before us on petition and answer, and the above are the material facts either averred in the petition and admitted in the answer, or averred in the answer and, therefore, taken to be true for present purposes. The use-plaintiff relies upon the Act of April 20, 1846, P. L. 411. Section one of said act provides, in effect, that whenever a purchaser of real estate at sheriff's sale shall appear from the proper record to be entitled as a lien creditor to receive the whole or any portion of the proceeds of said sale, it shall be the duty of the sheriff to receive the receipt of such purchaser for the amount which he would appear, from the record as aforesaid, to be entitled to receive.

It will be noted that this section is mandatory upon the sheriff. It does not say that the sheriff "may" receive the receipt, but it says that it "shall" be his "duty" to receive such receipt. Where an act sets forth the duty of a public official in mandatory language, he has no option but to obey.

In section two the remedy of a person in the position of the Smiller Building and Loan Association in this case is provided, and the rights of such person are adequately protected. Section two provides that the sheriff in his return shall state said facts and attach thereto a list of the liens upon the property sold, said return to be read in open court on a day to be fixed by the court. If the right of the purchaser to the money mentioned in said return (and, of course, the money mentioned is the amount of the bid, including that portion for which a receipt was accepted, as well as any portion paid in cash, for the sheriff must account for the entire amount of the bid) shall be questioned by any person interested, the court shall appoint an auditor, who shall make a report distributing the proceeds, or shall direct an issue to determine the validity of said lien (referring, of course, to the lien for which a receipt was accepted), and all further proceedings shall be stayed until said issue shall be decided. In case it shall be determined that the purchaser was not entitled to receive said money (meaning, of course, the money covered by the receipt), it shall be the duty of the court to set aside the sale and direct the real estate to be resold, unless the money (meaning cash in place of the amount of the lien for which the receipt was accepted) is paid to the sheriff within ten days.

The argument of counsel for Smiller Building and Loan Association is largely to the effect that if the sheriff shall accept the receipt of use-plaintiff for the amount of her lien as shown by the record, title to the property may get into the hands of an innocent purchaser and the Smiller Building and Loan Association will be without remedy if the lien of the use-plaintiff should later be declared invalid. Counsel argued that the law should be otherwise. It is idle to argue as to what the law should be when it is definitely fixed what the law is. The Act of 1846 imposes a duty upon the sheriff. The sheriff has no alternative but to obey. Nor is there any merit in the claim of counsel for the

Smiller Building and Loan Association that its rights will be prejudiced by such action on the part of the sheriff. Section two of the Act of 1846 provides ample protection for such a party, and definitely states how this protection shall be secured. It provides for a stay of proceedings pending the determination of the validity of the use-plaintiff's lien, and, if proceedings are so stayed, title will never vest in the use-plaintiff until the validity of her lien is determined. The procedure in the sheriff's office is that a deed is executed by the sheriff and then lodged with the prothonotary for one week. It is then acknowledged by the sheriff, delivered to him by the prothonotary and recorded. Title does not pass to the purchaser until the redelivery of this deed by the prothonotary to the sheriff. This interim of one week gives counsel for Smiller Building and Loan Association ample opportunity to assert its rights and to secure a stay of proceedings until they are determined.

This act is elaborately construed, and the remedies of a lienholder are distinctly set forth in many decisions handed down by our courts, among which might be cited: Second National Bank v. Pennsylvania, etc., Coal Co., 140 Pa. 628, Com. ex rel. Welles v. Knorr, 10 Dist. R. 535, and Zietz v. Schembs, 10 D. & C. 159. Counsel for the Smiller Building and Loan Association should follow the act and the above decisions. To ask us to pass upon the validity of use-plaintiff's lien at this time and in this proceeding is to ask us to do something which under the Act of 1846 we do not have authority to do. Nor do we have authority at this stage of the proceedings to require use-plaintiff to settle entirely for cash.

But while use-plaintiff is on solid ground in her main contention, her rule is too broad and we cannot make it absolute without qualification. The use-plaintiff asks that the sheriff shall be directed to accept from her a deed to be executed by him to use-plaintiff for the premises in question, and to accept the receipt of the petitioner for the amount of her lien as a credit against the said bid, and to accept from the petitioner the balance of said bid in cash. Use-plaintiff is entitled to this relief if, and only if, she complies with the last proviso in section one of the Act of 1846 and produces to the sheriff a duly certified statement from the proper records, showing that she is a lien creditor, entitled to receive part of the proceeds of the sale. This does not mean that she must show that she is entitled to receive the money, for that may be open for determination as provided in section two, but she must show that, on the face of the record, she is entitled to it. At this stage the sheriff need not and cannot look behind the record. When use-plaintiff presents such certificate, the sheriff is in duty bound to accept her receipt in the amount of her lien.

It has been the custom of the sheriff for many years to accept certificates of title companies in lieu of certificates from the proper public officials. It is the sheriff's privilege so to do, but he cannot be required so to do. The sheriff is personally liable for mistakes which he makes, and in accepting a certificate from a title company, he has the guaranty of the title company against loss. The sheriff may well conclude that this is his best protection, but, as stated above, that is for him to decide, and if he decides that he wishes certificates from the proper public officials, he cannot be required to accept the receipt of the use-plaintiff until such certificates are produced.

The rule further provides that the sheriff be required to record said deed. We cannot now direct the recording of the deed, because it may be that there will be proceedings on the part of the Smiller Building and Loan Association, under section two of the act, after the execution, but before the recording of the deed, and it may be that these proceedings will show that the deed should never be recorded.

The rule further provides that the sheriff should be required to make distribution of the said purchase money in accordance with the acts of assembly in such case made and provided. This is unnecessary. The sheriff is in duty bound to so distribute the funds, but one of the acts of assembly to be considered in making such distribution is the Act of 1846 hereinbefore cited, particularly section two of said act.

The sheriff should be careful to make his return as provided in section two of the Act of 1846, and to do nothing other than accept the receipt of the use-plaintiff, execute the deed and lodge the same with the prothonotary until further order of this court.

And now, to wit, June 20, 1932, rule absolute, subject to the conditions and limitations set forth in the foregoing opinion.